IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**INLAND FAMILY PRACTICE
CENTER, LLC**                                                                                   **PLAINTIFF**

**V.**                                              **CIVIL ACTION NO. 2:18-CV-140-KS-MTP**

**ALEX M. AZAR, II, Secretary of the
United States Department of Health
and Human Services**                                                                            **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **denies** Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction [5]. Plaintiff's Motion for Enforcement of Agreement [13] is, therefore, **moot**.

### I. BACKGROUND

Plaintiff, a medical service provider, alleges that Defendant has wrongfully recouped Medicare reimbursements for the past two years. Most of the disputed reimbursements are for urine-based drug testing. According to the Medicare Appeals Council ("MAC"), Plaintiff conducted "frequent combined qualitative and quantitative urine drug testing to ensure patients' compliance with their drug regimens and to identify patients who may be abusing illicit or non-prescribed controlled substances or . . . diverting their prescribed substances into the community." Exhibit 1 to Response at 8, *Inland Family Practice Ctr., LLC v. Azar*, No. 2:18-CV-140-KS-MTP (S.D. Miss. Aug. 24, 2018), ECF No. 17-1. But, according to the MAC:

> It is clear from the pertinent coverage authorities that Medicare supports, and reimburses, random drug testing for individuals on drugs of potential

> abuse for chronic pain who are at high risk or have engaged in aberrant behavior, as well as baseline testing. However, absent sufficient supporting evidence, Medicare will not cover a physician's testing at frequent visits of many possible drugs for which there has been no documented history of use or abuse. Such testing frequency is particularly concerning when the entity billing for drug testing is also ordering the tests and where there is thus a financial incentive to profit from unnecessary tests.
>
> * * *
>
> Thus, in each instance, there must be beneficiary-specific documentary evidence, sufficient by Medicare standards, in order to adequately demonstrate the medical necessity of claims for purposes of obtaining Medicare coverage.

*Id.* at 11-12. According to the MAC, Plaintiff's records contained insufficient evidence to justify coverage of the frequent drug testing in most cases. *Id.* at 12. The MAC denied Plaintiff's appeal with respect to most of the services. *Id.* at 5.

Plaintiff filed suit in this Court and filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction [5], requesting that the Court immediately enjoin Defendant from recouping any further reimbursements. The parties reached an agreement with respect to the request for a TRO, and Defendant agreed to stop recouping payments until the Court addressed Plaintiff's Motion for a Preliminary Injunction [5]. The Court held a hearing on the motion on September 5, 2018.

## **II. DISCUSSION**

To obtain a preliminary injunction, "the plaintiff must establish four elements: '(1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened

injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest.'" *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014) (quoting *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998)). "A preliminary injunction is an extraordinary remedy that should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012).

The Court need only address one of the elements cited above: whether Plaintiff has demonstrated a substantial likelihood of success on the merits. This is an administrative appeal, and the Court's jurisdiction to review the Secretary's final decision arises from the Title XVIII of the Social Security Act, where the Medicare program is codified. *See* 42 U.S.C. § 1395oo(f)(1). The statute provides that courts must review the Secretary's decisions under the standards provided in the Administrative Procedures Act. *Id.* Therefore, the Court is only permitted to set aside the Secretary's decision if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law or unsupported by substantial evidence." *Cedar Lake Nursing Home v. U.S. Dep't of Health & Human Servs.*, 619 F.3d 453, 456 (5th Cir. 2010) (punctuation omitted) (quoting 5 U.S.C. § 706(2)).

"Arbitrary and capricious review focuses on whether an agency articulated a rational connection between the facts found and the decision made." *ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*, 867 F.3d 564, 571 (5th Cir. 2017) (quoting *Pension*

*Benefit Guar. Corp. v. Wilson N. Jones Mem'l Hosp.*, 374 F.3d 362, 366 (5th Cir. 2004)).

An agency's decision is also arbitrary and capricious if:

> . . . the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Baylor County Hosp. Dist. v. Price*, 850 F.3d 257, 264 (5th Cir. 2017) (quoting *Tex. Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 933 (5th Cir. 1998)). "So long as the agency's reasons and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld." *Id.* "[T]here is a presumption that the agency's decision is valid," *Markle Interests, LLC v. United States Fish & Wildlife Serv.*, 827 F.3d 452, 460 (5th Cir. 2016), and the "party challenging the agency's action bears the burden of establishing that the agency's determination was arbitrary and capricious." *ExxonMobil*, 867 F.3d at 571.[1]

Plaintiff contends that Defendant's extrapolation methodology is flawed. It presented a report and affidavit from a purported expert statistician in support of its argument. However, the MAC disagreed with Plaintiff, noting a CMS publication, the Medicare Program Integrity Manual ("MPIM"). Exhibit 1 [17-1], at 15-17. According

---

[1] At the hearing, Plaintiff's counsel argued that the Court should review the agency's decision *de novo*, but Plaintiff has not cited any law whatsoever in support of this argument. Plaintiff contends that it was deprived of a meaningful hearing because of delays in the appeal process. However, it is undisputed that Plaintiff voluntarily escalated its case, foregoing a hearing before an ALJ. Plaintiff has not cited any legal precedent for altering the standard of review in an administrative appeal where the appellant voluntarily waived its right to a hearing before an ALJ.

to the MAC, the Zone Program Integrity Contractor ("ZPIC") properly applied the MPIM, and Plaintiff presented no evidence that the ZPIC "manipulated the process in any manner to achieve a higher assessment than would otherwise have occurred." *Id.* at 17. The MAC then addressed each specific aspect of Plaintiff's expert's report. *Id.* at 17-20. In summary, the MAC relied on the MPIM and its "extensive history of reviewing statistical sampling extrapolations performed by Medicare contractors," *id.* at 20, and it concluded that Plaintiff's expert did not "challenge[] the *design* of the sample, but only the *result* of the sample." *Id.* at 21. "The ZPIC's statistical documentation shows that the claims in the frame were sorted by two objective factors – service location and claim number – and [Plaintiff's expert raised no] specific objection to this sorting of the frame." *Id.*

The MAC's analysis "articulated a rational connection between the facts found and the decision made." *ExxonMobil*, 867 F.3d at 571. Plaintiff's expert may disagree with the analysis, but that does not render the MAC's decision arbitrary and capricious. "So long as the agency's reasons and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld." *Price*, 850 F.3d at 264. Based on the record currently before the Court, the MAC's analysis meets this minimal standard. Therefore, Plaintiff has not demonstrated a substantial likelihood of success on this argument.

Plaintiff also argues that it has a substantial likelihood of success on the merits because it is undisputed that some of the denials have been overturned and allowed.

In other words, Plaintiff argues that a partial victory is certain. The problem with this argument is that Plaintiff did not request a partial preliminary injunction. Rather, Plaintiff wants the Court to stop all recoupment immediately. Even if the Court assumes that Plaintiff will be partially successful, it does not have sufficient information or briefing to order a modification of the total amount to be recouped. Regardless, Defendant's counsel acknowledged at the hearing that the total recoupment amount needed to be modified in light of the MAC's ruling, and represented that it would be adjusted.

### III. CONCLUSION

For these reasons, the Court **denies** Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction [5]. Plaintiff's Motion for Enforcement of Agreement [13] is, therefore, **moot**.

SO ORDERED AND ADJUDGED this 7th day of September, 2018.

/s/ Keith Starrett

KEITH STARRETT
UNITED STATES DISTRICT JUDGE